UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

SHALLEN RICHOUX                                CIVIL ACTION

VERSUS                                         NO. 13-375

JEFFERSON MARINE TOWING, INC.                  SECTION "B"(5)

ORDER AND REASONS

Nature of Motion and Relief Sought:

Before the Court is Defendant Jefferson Marine Towing, Inc.'s ("Jefferson Marine") Motion for Partial Summary Judgment, Plaintiff Shallen Richoux's ("Richoux") Opposition, and Jefferson Marine's Reply. (Rec. Docs. No. 17, 23, & 24).

**IT IS ORDERED** that the Motion is **GRANTED in part** with respect to Richoux's claims for punitive damages and attorneys fees and **DENIED in part** with respect to his claims for compensatory damages.

Factual and Procedural History:

This case arises from an incident aboard the *MV Annette*, a vessel owned and operated by Jefferson Marine, while it was navigating the Harvey Canal. (Rec. Doc. 1 at 2). Richoux alleges that on November 19, 2012, he fell into an obscured hole on one of *Annette*'s barges while working as a deckhand, receiving injury to his shoulder, cervical spine, right leg, and other unspecified parts of his body. *Id.* 2-3. He seeks maintenance and cure benefits as well as compensatory and punitive damages for Jefferson Marine's allegedly unreasonable and wanton failure to provide such benefits

on a timely basis.[1] *Id.* at 3-5. Jefferson Marine now moves for partial summary judgment on Richoux's claims for compensatory and punitive damages, arguing a lack of evidence in support of either claim.

Richoux first requested maintenance and cure from Jefferson on Friday, December 14, 2012, by letter and through his present counsel. (Rec. Doc. 17-2 at 3). That letter demanded maintenance at $65 per day and authorization for medical treatment with doctors of Richoux's choosing. (Rec. Doc. 17-5). The letter did not describe Richoux's injuries, mention living expenses, name the vessel on which he worked, or otherwise explain the events of November 19 beyond advising that Richoux's current counsel "now represent[s] Mr. Richoux regarding his work related accident, which occurred on November 19, 2012." *Id.*

Jefferson Marine responded by letter on Monday, December 17, 2012, stating that it was unaware of any accidents involving Richoux and requesting statements from Richoux and other documentation corroborating that Richoux had been injured while in its employ. (Rec. Doc. 17-6). Over two weeks later, on Friday, January 4, 2013, Richoux's counsel responded by letter, stating that Richoux needed a cervical MRI and attaching medical referral forms from the Westbank Health Care Center indicating that Richoux

---

[1] Richoux also seeks recovery for negligence and unseaworthiness. (Rec. Doc. 15 at 2-3). These theories are not relevant to the instant motion for partial summary judgment and are not addressed here.

would need such treatment and was unable to work. (Rec. Doc. 17-8 at 1-4). Jefferson Marine responded the following Wednesday, on January 9, reiterating its requests for documentation. (Rec. Doc. 17-9). Roughly three weeks later, on January 29, 2013, Richoux's counsel submitted a "Monthly/Annual Expense Form" itemizing Richoux's monthly expenses, presumably to substantiate his claim for maintenance. (Rec. Doc. 17-10). Two days later counsel for both parties scheduled a meeting at Richoux's counsel's office at which Jefferson Marine would take Richoux's statement and thereby obtain information regarding his claims. (Rec. Doc. 17-11). Richoux later canceled the appointment for unspecified reasons. (Rec. Doc. 17-2 at 5). Richoux then filed the instant compliant on February 27, 2013, apparently without further correspondence between the parties. (Rec. Doc. 1). One week later, on March 6, 2013, Jefferson Marine acknowledged receipt of the instant complaint and again requested information corroborating Richoux's costs. (Rec. Doc. 17-12). On March 18, 2013, Richoux's counsel sent his medical records from the Westbank Health Care Center to Jefferson Marine. (Rec. Doc. 17-13). Finally, on March 28, 2013, Jefferson Marine agreed to pay Richoux maintenance "under protest" at $35 per day, retroactive to December 12, 2012, and later paid for Richoux's expenses at the Westbank facility (Rec. Docs. 17-2 at 6 and 17-7 at 1-2). Jefferson Marine continued paying such benefits at the time its briefs were filed, but the parties dispute to what extent.

Jefferson Marine now moves for partial summary judgment on Richoux's claims for compensatory and punitive damages, arguing that at all times it acted reasonably in seeking to corroborate Richoux's request for maintenance and cure.

Law and Analysis:

**A. Standard of Review**

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying the materials that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must then produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas*, 139 F.3d 532, 536 (5th Cir. 1998). The nonmovant must go beyond the pleadings and

use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Webb*, 139 F.3d at 536. Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc.* 7 F.3d 1203, 1207 (5th Cir. 1993).

**B. Applicable Law**

When a seaman is injured while in the service of his ship, the shipowner must pay him maintenance and cure, whether or not the shipowner was at fault or the ship unseaworthy. *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir. 1987). "This obligation includes paying a subsistence allowance [maintenance], reimbursing medical expenses actually incurred [cure], and taking all reasonable steps to ensure that the seaman receives proper care and treatment." *Id.* The right to maintenance and cure exists "independent of any other source of recovery for the seaman (e.g., recovery for Jones Act claims)." *Bertram v. Freeport McMoran, Inc.*, 35 F.3d 1008, 1013 (5th Cir.1994). Thus, a vessel owner is "almost automatically" liable for the cost of medical treatment for a seaman injured in his employ. *Manderson v. Chet Morrison Contractors, Inc.*, 666 F.3d 373, 380 (2012).

However, "[u]pon receiving a claim for maintenance and cure, the shipowner need not immediately commence payments; he is entitled to investigate and require corroboration of the claim." *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir.

5

1987)(citing *McWilliams v. Texaco, Inc.*, 781 F.2d 514, 518-20 (5th Cir.1986)). If the shipowner unreasonably rejects a claim after investigating, the owner then becomes liable for compensatory damages, which are determined according to usual compensatory damage principles applied in tort cases. *Id.* Additionally, the owner may also be liable for punitive damages and attorneys fees if "more egregiously at fault" in denying a proper claim for maintenance and cure. *Id.* This higher degree of fault has been explained in such terms as "callous and recalcitrant, arbitrary and capricious, or willful, callous and persistent." *Id.* Thus, there is an "escalating scale of liability:"

> a shipowner who is in fact liable for maintenance and cure, but who has been reasonable in denying liability, may be held liable only for the amount of maintenance and cure. If the shipowner has refused to pay without a reasonable defense, he becomes liable in addition for compensatory damages. If the owner not only lacks a reasonable defense but has exhibited callousness and indifference to the seaman's plight, he becomes liable for punitive damages and attorney's fees as well.

*Id.* However, punitive damages cannot be "awarded for failure to pay *adequate* maintenance;" they must, instead, be based on "egregious shipowner conduct exhibiting wanton and intentional disregard of a seaman's rights." *Harper v. Zapata Off-Shore Co.*,

6

741 F.2d 87, 88 (5th Cir. 1984). Employer conduct that may justify punitive damages includes (1) negligent investigation of a claim, (2) termination of benefits as a reprisal for retaining counsel or refusing settlement, or (3) failure to reinstate benefits following discovery of a previously undetermined ailment. *Great Lakes Dredge v. Martin*, 2012 WL 3158870 at *3 (E.D. La, 2012)(citing *Breese v. AWI, Inc.*, 823 F.2d 1008, 1013 (5th Cir. 1985)).

### C. Analysis

Here, Richoux seeks both compensatory and punitive damages for what he alleges was Jefferson Marine's "willful, wanton, arbitrary, [and] capricious" failure to pay maintenance and cure. (Rec. Doc. 1 at 3). He alleges that he has had to endure "additional and unnecessary pain, suffering and financial stress and possible worsening of his physical conditioning." *Id.* He has failed, however, to point to any evidence of callous or wanton conduct on the part of Jefferson Marine.

In moving for summary judgment, Jefferson Marine produces correspondence that is the sole source of evidence regarding its course of behavior in investigating Richoux's claim for maintenance and cure. That correspondence, which Richoux does not challenge or dispute, shows the following.

Richoux first requested maintenance and cure by letter and through his current counsel on December 14, 2012, roughly a month

after the alleged accident. (Rec. Doc. 17-2 at 3). The letter requested maintenance and cure for a "work related accident, which occurred on November 19, 2012," and offered no other details of the alleged injury or accident. *Id.* Jefferson Marine responded on the next business day, stating that it had no record or knowledge of an accident on that date and requesting documentation of the injury, including medical reports. (Rec. Doc. 17-6). The letter also requested the opportunity to take a statement from Richoux at his counsel's office and enclosed a monthly expense form for completion by Richoux. *Id.* Richoux's counsel took over two weeks to reply. (Rec. Doc. 17-8). Her letter did not acknowledge, let alone respond to, Jefferson Marine's several requests. Rather, she attached a medical referral form indicating a need for an MRI and an "out of work form" indicating that Richoux could not return to work for medical reasons, both from the Westbank Health Care Center. *Id.* Jefferson Marine promptly responded, reiterating its requests to take Richoux's statement and for documentation. (Rec. Doc. 17-9). Richoux's counsel again took over two weeks to respond with a one-line letter attaching a completed and itemized monthly expense form. (Rec. Doc. 17-10). A few days later the parties scheduled an appointment for a February 7, 2013 meeting at Richoux's counsel's office in which Jefferson Marine would take his statement. (Rec. Doc. 17-11). Richoux later canceled without explanation. (Rec. Doc. 17-2 at 5). Richoux then filed the instant complaint on February

8

27, 2013, roughly three weeks after that meeting would have taken place. (Rec. Doc. 1). On March 28, 2013, Jefferson Marine agreed "under protest" to pay Richoux's medical bills and maintenance at $35 a day, retroactive to December 13, 2012. (Rec. Doc. 17-2 at 6).

Jefferson Marine has also produced two affidavits. In the first, John Pereira, Jefferson Marine's personnel manager, claims the company had no record or knowledge of the a November 19, 2012 accident involving either Richoux or the *Annette* prior to initiation of the instant suit. (Rec. Doc. 17-4). In the second, Thomas Halverson, Jefferson Marine's Claim Manager, also claims the company had no record or knowledge of the incident and attests that the company continues to pay Richoux maintenance and cure since March 28, 2013. (Rec. Doc. 17-7 at 1-2).

Such evidence sufficiently demonstrates an absence of factual issues concerning the reasonableness of Jefferson Marine's conduct in investigating Richoux's claim. The correspondence and affidavits evince a reasonable and diligent effort to seek corroborative documentation. That evidence also suggests that much, if not all, of the delay was caused by Richoux and or his counsel, who were not only slow to respond but also flatly ignored or responded only in part to Jefferson Marine's requests. Accordingly, the burden shifts to Richoux, who must, by submitting or referring to items of evidence, set out specific facts that establish a genuine issue concerning a lack of reasonableness or more egregious fault on the

9

part of Jefferson Marine.

Richoux's opposition brief is difficult to read. It cites not a single case and smothers itself with adjectives. At it's core, however, it appears to argue that Jefferson Marine had notice of his claims sometime in November of 2012 and that all the ensuing investigations and requests for corroborative documentation were therefore farcical, rendering them unreasonable and arbitrary.[2] This argument relies entirely on the affidavit of Kurt Lirette, Richoux's co-worker. (Rec. Doc. 23-2).

In his affidavit, Lirette attests that he witnessed Richoux's accident aboard the *Annette* on February 19, 2012, that Richoux was afterwards in a visibly injured state, and that the incident was immediately reported to the ship's captain. *Id.* at 1-3. Lirette further swears that John Periera contacted him within two weeks of the accident to inquire about Richoux's claims, stating that

---

[2]On this point, Richoux's brief states that:

> The only complete failure of proof here is that which is said to support Jefferson Marine's contumacious refusal to pay maintenance and cure benefits despite having in its possession, long before suit was filed, ample evidence to show that it was obligated to pay maintenance and cure benefits as early as two (2) weeks following the incident of November 19, 2102.

(Rec. Doc. 23 at 2). The brief further states that "it is plain and clear that Jefferson Marine believes that the assertion that it was conducting a 'reasonable investigation' will suffice to wash away all of its sins," which the brief deems "demonstrably incorrect." *Id.* Rather than interpret this to suggest that a belief that one can "wash away sins" may be demonstrably proven "incorrect," the Court reads this as contending that *any* investigation by Jefferson Marine would be unreasonable given the knowledge it had at the time of the request for maintenance and cure.

Richoux "had a lawsuit" against Jefferson Marine.[3] *Id.* Lirette claims to have informed Periera of the incident and that Periera then fired him over the phone. *Id.*

While Lirette's affidavit flatly contradicts Periera's affidavit and contains troubling claims, it does not give rise to a genuine issue of material fact under the relevant law as to punitive damages and attorneys fees. The Fifth Circuit has made clear that an employer has a right to "investigate and require corroboration" within reasonable bounds "*upon* receiving a claim for maintenance and cure." *MNM Boats, Inc. v. Johnson*, 248 F.3d 1139 (5th Cir. 2001)(emphasis added). In other words, an employer's right to investigate claims for maintenance and cure is triggered by submission of an actual claim and not suspicion that a claim will or might be made.

Here, Richoux submitted his claim on a Friday and Jefferson Marine responded with requests for corroborative documentation by the following Monday. What followed indeed created delay, but Richoux has not directed the Court towards *any* evidence that such delay was attributable to Jefferson Marine and not his own counsel, let alone that Jefferson Marine's conduct was willful, callous, arbitrary, or otherwise egregiously at fault. The evidence shows

---

[3]It is not clear what "lawsuit" is referenced here, as the instant case had not yet been initiated and Richoux had not yet even submitted a claim for maintenance and cure to Jefferson Marine, let alone sought medical treatment for his alleged injuries.

that Jefferson Marine acted with reasonable diligence, repeatedly and promptly requesting documentation and the opportunity to take Richoux's statement. Shortly after Richoux scheduled the meeting that Jefferson Marine originally requested--some several months after he first submitted his claim--he canceled without explanation and initiated this suit without rescheduling. Such does not exhibit "callousness and indifference to the seaman's plight" on the part of Jefferson Marine. *Morales*, 829 F.2d at 1358.

To the extent that Richoux argues that Jefferson Marine's failure to pay him a sufficient *amount* of maintenance, he confronts a similar lack of evidence. Further, Fifth Circuit precedent establishes that punitive damages cannot be awarded for failure to pay an adequate *amount* of maintenance. *Harper v. Zapata Off-Shore Co.*, 741 F.2d 87, 88 (5th Cir. 1984).

While the Court finds no genuine issue of material fact underlying Richoux's claims for punitive damages, the same is not true of his claims for compensatory damages. As explained above, claims for compensatory damages turn on the reasonableness of a shipowner's conduct in investigating claims. *See*, *e.g.*, *Morales*, 829 F.2d at 1358. The Court finds that Lirette's affidavit creates factual issues for the jury on this issue, including whether Jefferson Marine acted reasonably in requesting the opportunity to take Richoux's statement and seeking further corroboration despite the information Lirette claims to have provided it.

Conclusion

Richoux has failed to produce or reference evidence creating a genuine issue of material fact regarding his claims for attorneys fees and punitive damages. A genuine issue of material fact remains, however, as to his claims for compensatory damages. Accordingly,

**IT IS ORDERED** that Jefferson Marine's Motion be **GRANTED** with respect to Richoux's claims for punitive damages and **DENIED** with respect to his claims for compensatory damages.

New Orleans, Louisiana, this 6th day of January, 2014.

_____
  UNITED STATES DISTRICT JUDGE